## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ZACHARY KELLY                                           Case No.:

     Plaintiff,

PHILIP MORRIS INTERNATIONAL, INC.,
and SWEDISH MATCH NORTH AMERICA, LLC,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      Zyn is a small, flavored nicotine pouch that users place in their mouths.  Like
cigarettes and e-cigarettes, Zyns are designed to create and sustain an addiction to nicotine.
Nicotine is the fundamental reason why people use these products.  Nicotine is a highly addictive
drug, just as addictive as cocaine and heroin.  Kids, especially, are vulnerable to nicotine addiction.
Nine out of ten nicotine users start by the age of 18, and more than 80% who begin as teens will
continue into adulthood.  Defendants know this.  And who better than Philip Morris International?
PMI has, for decades, profited by addicting kids to Marlboro cigarettes, the world's most popular
brand.  It is no surprise then that PMI bought the company, Swedish Match, that makes the most
popular oral nicotine pouch.  Zyn sales are soaring.  Zyn makes up about 70% of the nicotine
pouch market.  PMI shipped 350 million cans of it in 2023 – a 62% growth compared to the year
before.  PMI expects to earn $2 Billion in revenue from Zyn in 2024.

2.      Zyn is just a recent iteration of the tobacco industry's historical practice of
designing a nicotine delivery device that hooks kids to nicotine while making them think it is not

dangerous or harmful.  And so Zyn looks like chewing gum, and it comes in gum-like flavors: "wintergreen," "peppermint," "cool mint," "spearmint," "citrus," "cinnamon" and others. Flavored nicotine exists to addict kids to it.



3.      Advertisements for Zyn emphasize the themes the industry has long-known resonates with kids, like "Freedom," "Finding Your Curiosity," "Never Miss a Moment" and "Find Your Zyn" – a clear play on the word "Zen," which generally connotes peace and inner calm.





4.      Defendants also benefit tremendously from "Zynfluencers," – social media influencers who promote Zyn. There are around 30,000 TikToks under the hashtag #Zyn, which has amassed more than 700 million views.  Another hashtag, #Zynbabwe, has amassed about 95 million views.  Young people are exposed, and according to the CDC, rates of oral nicotine pouch users among middle schoolers and highs schoolers are rising.  Here are examples of such promotion:





5.      In addition to targeting kids through flavors, Defendants use deceptive advertising in describing Zyn as "tobacco-free," which falsely implies that Zyns are not harmful or there is a reduced risk of addiction.  Technically, "tobacco-free" means that no part of the product is derived from the tobacco plant.  But Zyn's nicotine is indeed derived from tobacco.



6.      Like too many others, Plaintiff, Zachary Kelly, began using Zyn as a teenager. He was enticed by the flavors and by Defendants' deceptive advertising.  He brings this suit to redress his injuries caused by Zyn.

**PARTIES, JURISDICTION, AND VENUE**

7.      Plaintiff, Zachary Kelly, is a citizen of the state of Florida and resides in the Southern District of Florida.  He began using Zyn when he was a teenager in or about 2019.  He is addicted to the nicotine contained in Zyn and has suffered personal injuries as a result of his Zyn use.  Plaintiff was influenced by Zyn's marketing and advertising, which drove purchases.  Plaintiff did not know of Zyn's unreasonably dangerous characteristics when he began using Zyn. Defendants' wrongful conduct in marketing, promoting, manufacturing, designing, and selling Zyn caused or contributed substantially to causing his injuries.

8.      Defendant, Swedish Match North America LLC, is headquartered in Richmond, Virginia, and is a citizen of the state of Virginia.  Upon information and belief, no member of this LLC are citizens of the state of Florida.

9.      Defendant, Philip Morris International Inc. is a citizen of the states of Connecticut and Virginia.  It is headquartered in Stamford, Connecticut and is incorporated in the state of Virginia.

10.      The Defendants design, manufacture, market, advertise, promote, distribute and sell Zyn in the United States.

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one Plaintiff and Defendant are citizens of different states.

12.      This Court has personal jurisdiction over the Defendants because they have committed the acts complained of herein in this State and in this District.  Defendants have significant contacts with the District such that they are subject to personal jurisdiction of the Court.

13.    This Court has personal jurisdiction over Defendants for the additional reason that they have engaged in substantial, systematic and continuous contacts with this State by, *inter alia*, regularly conducting and soliciting business in this State and this District, deriving substantial revenue from products and/or services provided to persons in this State and this District, and in some circumstance, from products and services provided from persons in this State.

14.    A substantial part of the events and omissions giving rise to Plaintiffs' causes of action occurred in the Southern District of Florida. Pursuant to 28 U.S.C. § 1391(a), venue is proper in said District.

## FACTUAL ALLEGATIONS

15.    Zyn is an oral nicotine product (ONP) that comes in a pouch, a small, pillow-like container.

16.    The nicotine in Zyn is derived from tobacco leaf but the pouches do not contain the tobacco leaf itself.  Instead, they contain pharmaceutical grade nicotine salt and other ingredients like flavors.[1,2]

17.    Zyn works by delivering nicotine orally.  The nicotine leaks out of a permeable wrapper and is absorbed into the bloodstream through the oral mucosa, the lining of the mouth.

18.    Once the user places Zyn in her mouth, the nicotine immediately takes effect, increasing heart rate and blood pressure, followed by the release of dopamine and other neurotransmitters. The release of dopamine signals pleasure and keeps users addicted.

---

[1] Ramamurthi, Divya; Chau, Cindy; Zhuojing, Lu; Rughoobur, Ilina; Sanaie, Keon; Krishna, Partha; Jackler, Robert MD. *Marketing of "Tobacco-Free" and "Synthetic Nicotine" Products*, White Paper, Stanford Research into the Impact of Tobacco Advertising.  March 8, 2022, (available at) https://tobacco-img.stanford.edu/wp-content/uploads/2022/03/13161808/Synthetic-Nicotine-White-Paper-3-8-2022F.pdf

[2]  *Can Nicotine Pouches Like Zyn Harm Your Health?* (available at) https://www.nytimes.com/2024/01/25/well/live/zyn-nicotine-pouches-health-risks.html

19.    Zyn is available in nicotine concentrations of 3mg, 6mg, and 8mg.

20.    Zyn is designed to create and sustain addiction to nicotine.  A typical cigarette smoker absorbs 1mg of nicotine into the body per cigarette.  Zyn's own research shows that at its 3 mg nicotine concentration, 1.59 mg of nicotine per single pouch is absorbed into the body; at its 6 mg concentration, 3.51 mg of nicotine per pouch is absorbed; and at its 8 mg concentration, 3.79 mg of nicotine per pouch is absorbed.[3]  Zyn, therefore, delivers a potent dose of nicotine into the bloodstream.

21.    Defendants falsely maintain that Zyn is a smokeless nicotine replacement therapy from cigarettes or e-cigarettes, yet the nicotine concentration levels in Zyn exceed the levels found in nicotine replacement therapies.[4]  Defendants have not received authorization from the FDA to market its product as a modified risk tobacco product or tobacco cessation device.  What's more, Nicotine pouches are available in a wider variety of flavors compared to FDA approved nicotine replacement gum or lozenges.[5]

22.    Defendants also falsely maintain that Zyn is "tobacco-free."  It is not.  The nicotine in Zyn is derived from tobacco.  Promoting Zyn as "tobacco-free" and like descriptors such as "cleaner than anything out there," or placing Zyn among produce – as in the Zyn advertisements below – explicitly or implicitly represents that Zyn is less harmful that other nicotine-based products, or that Zyn contains less of a substance, like nicotine, than others, or that Zyn is free of

---

[3] Lunell, Erik, et al. *Pharmacokinetic Comparison of a Novel Non-tobacco-Based Nicotine Pouch (ZYN) With Conventional, Tobacco-Based Swedish Snus and American Moist Snuff*. Nicotine & Tobacco Research, 2020, 1757-1763.

[4] Majmundar, Anuja, et al. *Nicotine Pouch Sales Trends in the US by Volume and Nicotine Concentration Levels From 2019 to 2022*.  JAMA Network Open, Substance Use and Addiction. 2022; 5(11):e2242235.

[5] Ling, Pamela M. et al, *Tobacco-Derived Nicotine Pouch Brands and Marketing Messages on Internet and Traditional Media: Content Analysis*. JMIR Formative Research. 2023; 7:e39146. (available at)
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9978966/

a substance compared to others.  All of which is false, misleading, and purposefully targets youth and naïve tobacco users.





23.     Defendants have long known that nicotine is the fundamental reason that people persist in using nicotine-based products.

24.     According to the U.S. Surgeon General, about 90% of nicotine users start by the age of 18, of which, more than 80% will continue using into adulthood.  Moreover, and more than 80% of whom choose brands that are most heavily advertised.[6]  Defendants have long known this as well.

25.     Defendants' business model today is exactly how Philip Morris described it long

---

[6] *Preventing Tobacco Use Among Youths, Surgeon General Fact Sheet*, Surgeon General., https://www.hhs.gov/surgeongeneral/reports-and-publications/tobacco/preventing-youth-tobacco-use-factsheet/index.html (last visited, Feb. 29, 2024).

ago:

> Today's teenager is tomorrow's potential regular customer and the overwhelming majority of smokers first begin to smoke while in their teens. . . . The smoking patterns of teen-agers are particularly important to Philip Morris. . . the share index is highest in the youngest group for all Marlboro and Virginia Slims packings. At least a part of the success of Marlboro Red during its most rapid growth period was because it became the brand of choice among teenagers who then stuck with it as they grew older.

> "Marlboro's phenomenal growth rate in the past has been attributable in large part to our high market penetration among young smokers ... 15 to 19 years old . . . my own data, which includes younger teenagers, shows even higher Marlboro market penetration among 15-17-year-olds."

> "The ability to attract new smokers and develop them into a young adult franchise is key to brand development."[7]

26.     To "get our share of the youth market," as Claude Teague of R.J Reynolds, PMI's one-time conspirator, had said, Defendants employ the same kind of fraudulent and deceptive youth marketing business practices that PMI has been using for decades – the very practices adjudged to violate federal racketeering laws. They exploit themes that resonate with teenagers while falsely deny doing so.[8]

27.     For decades, Philip Morris intentionally exploited adolescents' vulnerability to imagery by creating advertising that utilizes themes of independence, adventurousness, sophistication, glamour, athleticism, social inclusion…and being "cool."[9]

---

[7] *Tobacco Company Quotes on Marketing to Kids*, Campaign for Tobacco-Free Kids (May 14, 2001), https://www.tobaccofreekids.org/assets/factsheets/0114.pdf.
[8] *USA v. Philp Morris*, 449 F. Supp. 2d 1 (D.D.C. 2006) (J. Kessler).
[9] *Id.*, 449 F. Supp. 2d at 571.



28.     Defendants just replaced Marlboro with Zyn.

29.     One recent study showed that Zyn is gaining popularity among teens because of Defendants' increased marketing.[10]  The study found that the marketing of oral nicotine products was "remarkably similar to the marketing for popular tobacco products."[11]  Participants under 21 felt targeted by Zyn's marketing.  Among the 2,738 study participants who saw the Zyn marketing, 28.1% felt that it targeted "people younger than me."  Those in the 13-20 year age group were more likely to buy Zyn based on its marketing if they perceived the marketing was about good tasting flavors or helping to feel comfortable in social situations.[12]

30.     Defendants use and promote flavors that are known to entice underage users.[13]

---

[10] Gaiha, Shivani M; Lin, Crystal; Lempert, Lauren K; Halpern-Felsher, Bonnie.  *Use, marketing, and appeal of oral nicotine products among adolescents, young adults, and adults*. Addictive Behaviors 140 (2023) 107632.

[11] *Id.*

[12] *Id.*

[13] *Id.*

"Taken as a category, mint/menthol/ice flavors were the most popular.  These findings mirror studies demonstrating the popularity of flavored tobacco products such as e-cigarettes."[14]

31.     The reason why Defendants use chewing gum flavors is to capture non-tobacco users through the use manipulative techniques to make a product attractive to the uninitiated.  The problem, however, is what lies beneath.  Drug addiction.  This strategy is in keeping with and expanding on the internal knowledge of the nicotine industry.  As Claude Teague stated perfectly in a secret memo "…the non-[cigarette] smoker has little or no knowledge of what satisfactions it may offer him and no desire to try it.  Instead, we must somehow convince him with wholly irrational reasons that he should try smoking, in the hope that he will for himself then discover the real "satisfactions" obtainable."[15]



RESEARCH PLANNING MEMORANDUM

ON

THE NATURE OF THE TOBACCO BUSINESS AND THE CRUCIAL

ROLE OF NICOTINE THEREIN

---

[14] *Id.*

[15] *Research and Planning Memorandum on The Nature of the Tobacco Business and the Crucial Role of Nicotine Therein.* 1972. Claude Teague, RJR Confidential.
https://www.industrydocuments.ucsf.edu/docs/kpkj0191

> desire.  We have deliberately played down the role of nicotine, hence the
>
> non-smoker has little or no knowledge of what satisfactions it may offer him,
>
> and no desire to try it.  Instead, we somehow must convince him with wholly
>
> irrational reasons that he should try smoking, in the hope that he will for
>
> himself then discover the real "satisfactions" obtainable.  And, of course, in

32.    "Satisfaction" in tobacco industry lingo means nicotine addiction.  The flavors Defendants use are the "wholly irrational reasons" to use flavored nicotine, which makes Zyn unreasonably dangerous and defective.

33.    Defendants' marketing efforts are paying off. Zyn made its debut in 2014.  Since 2016, it has become the overwhelming market leader of oral nicotine pouches.[16]  Nationwide sales of nicotine pouches continued to rise dramatically, as 808 million pouches were sold in the first three months of 2022 alone.  Zyn has accounted for about 60% of those sales.

---

[16] Ling, Pamela M. et al, *Tobacco-Derived Nicotine Pouch Brands and Marketing Messages on Internet and Traditional Media: Content Analysis*. JMIR Formative Research. 2023; 7:e39146. (available at)
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9978966/

34.     PMI bought Zyn for $16 Billion in 2022.  PMI's marketing efforts and tobacco sale know-how has fueled growth and secured market dominance as exhibited in this chart:



35.     Zyn is unreasonably dangerous, and therefore defective, particularly for youth. Chief among the reasons is that Zyn creates and sustains an addiction to nicotine.  Nicotine is a drug that is as addictive as heroin and cocaine.[17]

36.     Nicotine fosters addiction through the brain's "reward" pathway. Both a stimulant and a relaxant, nicotine affects the central nervous system; increases blood pressure, pulse, and metabolic rate; constricts blood vessels of the heart and skin; and causes muscle relaxation. Long-term exposure to nicotine causes upregulation—an increase in the number of these high-affinity nicotinic receptors in the brain. When nicotine binds to these receptors it triggers a series of physiological effects in the user that are perceived as a "buzz" that includes pleasure, happiness,

---

[17] *See e.g.,* US Department of Health and Human Services. *Nicotine Addiction: A Report of the Surgeon General*. DHHS Publication Number (CDC) 88 -8406, (1988).

arousal, and relaxation of stress and anxiety. With regular nicotine use, however, these feelings diminish, and the user must consume increasing amounts of nicotine to achieve the same effects.

37.     The Surgeon General has explained how nicotine affects the developing brain and can addict kids more easily than adults: "Until about age 25, the brain is still growing. Each time a new memory is created, or a new skill is learned, stronger connections—or synapses—are built between brain cells. Young people's brains build synapses faster than adult brains. Because addiction is a form of learning, adolescents can get addicted more easily than adults.[18]

38.     Nicotine use during adolescence disrupts the formation of brain circuits that control attention, learning, and susceptibility to addiction. Research has shown early age of nicotine use is correlated with daily use and lifetime nicotine dependence.[19]

39.     Nicotine exposure during adolescence likely has lasting adverse consequences for brain development.[20]

40.     Nicotine use can also intensify symptoms of depression and anxiety.  It also increases stress levels.[21]

41.     Overall, with chronic drug use, the brain becomes chemically altered, transforming a user into an addict.[22]

42.     Nicotine poses other health hazards.  For example, nicotine use is associated with

---

[18] *Know The Risks: E-Cigarettes & Young People*, https://e-cigarettes.surgeongeneral.gov/knowtherisks.html.

[19] *Nicotine and the young brain.* Truth Initiative, Jun. 8, 2022.   (available at) https://truthinitiative.org/research-resources/harmful-effects-tobacco/nicotine-and-young-brain.

[20] U.S. Department of Health and Human Services.  *E-Cigarette Use Among Youth and Young Adults.  A Report of the Surgeon General*.  CDC, Office of Smoking and Health; 2016.

[21] *Id.*

[22] *Neurochemical Effects of Nicotine*, Tobacco Dependence and Treatment for Smokers with Co-occurring mental illnesses (available at) https://iprc.indiana.edu/training/courses/Tobacco%20Dependence%20and%20Treatment/a_04_05_01.html

increased risk of cardiovascular, respiratory, and gastrointestinal disorders. There is decreased immune response and it also poses ill impacts on the reproductive health. It affects cell proliferation, oxidative stress, apoptosis, DNA mutation by various mechanisms which leads to cancer. It also affects the tumor proliferation and metastasis and causes resistance to chemo and radio therapeutic agents.[23]

43.     Health experts are also concerned that Zyn causes gum damage and periodontal disease.[24] That's because oral nicotine pouches like Zyn contain toxic chemicals, which can lead to injury of the gums.  "Persistent, recurrent injury can end up leading to inflammation, infection, but most importantly cancer."[25]

44.     Defendants fail to disclose these health risks.  The "warning" saying "This product contains nicotine.  Nicotine is an addictive chemical" is entirely insufficient to communicate the true extent of the dangers posed by Zyn.

## CLASS REPRESENTATION ALLEGATIONS

45.     Plaintiff brings this class action against Defendants on behalf of Plaintiff and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed classes are defined as follows:

> All persons who purchased, in the United States, Zyn products;
>
> All residents of Florida who purchased Zyn products;
>
> All residents of Florida who, at the time of their use of Zyn products, were under the age of 21, and who procured and used Zyn products.

---

[23] Mishra, Aseem, et al. *Harmful effects of nicotine*.  Indian J Med Paediatr Oncol. 2015 Jan-Mar; 36(1): 24-31.
[24] *What is Zyn? Doctors share health concerns of the popular and controversial nicotine pouch*. February 8, 2024 (available at) https://www.cbsnews.com/news/zyn-health-impacts-controversial-nicotine-pouch/
[25] *Id.*

46.     Plaintiff reserves the right to propose subclasses or modify the above class definitions, based on the evidence adduced in discovery, or as necessary and appropriate.

47.     This action has been brought and may properly be maintained as a class action against the Defendants pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable.

48.     Numerosity: Plaintiff does not know the exact size of the Classes but they are each composed of more than 500 persons.  The persons in the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

49.     Commonality: There are questions of law or fact common to the Class or Classes that predominate over any questions affecting only individual members, including:

      a.     Whether Defendants engaged in unlawful, unfair or deceptive business practices, as alleged herein;

      b.     Whether Defendants made unlawful and misleading representations or material omissions with respect to Zyn products;

      c.     Whether Defendants unlawfully marketed Zyn to minors;

      d.     Whether Zyn was defective in design;

      e.     Whether Zyn lacked adequate warnings;

      f.     Whether Defendants were negligent;

      g.     Whether Plaintiff and class members are entitled to equitable and injunctive relief;

      h.     Whether punitive damages should be awarded.

50.     Typicality: Plaintiff's claims are typical of the claims of the class.  Plaintiff and class members were injured through Defendants' substantially uniform misconduct.  Plaintiff is advancing the same claims and legal theories on behalf of Plaintiff and class members, and there are no defenses that are unique to Plaintiff's claims.  Plaintiff and class members' claims are from the same set of operative facts and are based on the same legal theories.

51.     Adequacy: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained competent and capable attorneys experienced in complex and class action litigation, including consumer class actions.  Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resourced to do so. Neither Plaintiff nor counsel have interests that are contrary to or that conflict with the class.

52.     Predominance: The common issues that comprise the basis for this lawsuit predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

53.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, absent a class action, class members as a practical matter will be unable to obtain redress; Defendants' violations of their legal obligations will continue without remedy, additional consumers will be harmed, and Defendants will continue to retain ill-gotten gains; it would be a substantial hardship for most individual class members if they were forced to prosecute individual actions; once liability has been adjudicated, the Court will be able to determine the claims of all class members; a class action will permit an orderly and expeditious administration of the claims, foster economies of time, effort and expense, and ensure uniformity of decisions; the lawsuit presents no difficulties that would impede its management by

the Court as a class action; and Defendants acted on grounds generally applicable to class members, making class-wide relief appropriate.

## CAUSES OF ACTION

## <u>CAUSE OF ACTION I</u>

### Strict Liability – Design Defect

54.     Plaintiff incorporates paragraphs 1–44 by reference as though set forth fully at length herein.

55.     Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Zyn that Plaintiff consumed.

56.     Zyn was designed and intended to be used as a method of ingesting nicotine and the other constituents in the Zyn pouch.

57.     Zyn was sold in a defective condition that is unreasonably dangerous and unsafe, and posed a substantial likelihood of harm to Plaintiff because of reasons including the high delivery of nicotine, the likelihood of nicotine addiction and the risks of behavioral, cognitive, and mental health injuries, cardiovascular injuries, gastrointestinal injuries, and periodontal injuries, among other harmful effects.

58.     Zyn was sold in a defective condition that is unreasonably dangerous and unsafe to Plaintiff because Defendants failed to adequately warn about the risk of nicotine addiction and failed to warn of the risks of behavioral, cognitive, and mental health injuries, cardiovascular injuries, gastrointestinal injuries, and periodontal injuries, among other harmful effects.

59.     Defendants designed and promoted Zyn to specifically appeal to minors and young adults, who were particularly unable to appreciate the risks posed by Zyn.

60.     Defendants designed Zyn with a pharmacokinetic profile engineered to create risks

of abuse and addiction.

61.     Defendants defectively designed Zyn that is inherently dangerous because it included features making the product attractive and more palatable to youth and non-smokers. These features include its concealability and its so called "tobacco-free" condition, which is false and misleading.

62.     Zyn does not perform as safely as a reasonable and ordinary consumer would reasonably assume and reasonably expect, as Zyn is designed to cause and sustain nicotine addiction, delivers a potent amount of nicotine, and is likely to cause behavioral, cognitive, and mental health injuries, cardiovascular injuries, gastrointestinal injuries, and periodontal injuries, among other harmful effects.

63.     The risks inherent in the design of Zyn significantly outweigh any benefits of such design.

64.     Defendants could have utilized cost effective, reasonably feasible alternative designs to minimize these harms, such as by designing products that delivered less nicotine, and/or did not have flavors that attract youth like Plaintiff.

65.     Plaintiff used Zyn as intended or in reasonably foreseeable ways.

66.     Plaintiff's injuries, physical, emotional, and economic, were reasonably foreseeable at the time of Zyn's design, manufacture, distribution, and sale.

67.     Zyn was defective and unreasonably dangerous when they left Defendants' possession.  The defects continued to exist through the products' sale to and use by consumers, including Plaintiff, who used the products without any substantial change in the products' condition.

68.     Plaintiff was injured as a direct and proximate result of Zyn's defective design as

described herein. The defective design of Zyn was a substantial factor in causing Plaintiff's harms.

69.      Plaintiff demands judgment against Defendants for compensatory and punitive damages, medical monitoring to diagnose Zyn induced injuries at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## CAUSE OF ACTION II
### Strict Liability – Failure to Warn

70.      Plaintiff incorporates paragraphs 1–44 by reference as though set forth fully at length herein.

71.      Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Zyn that Plaintiff consumed.

72.      Zyn was sold in a defective condition that is unreasonably dangerous and unsafe to Plaintiff because Defendants failed to adequately warn about the risk of nicotine addiction and failed to warn of the risks of behavioral, cognitive, and mental health injuries, cardiovascular injuries, gastrointestinal injuries, and periodontal injuries, among other harmful effects.

73.      Defendants were aware that Zyn posed risks that were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, distribution, and sale of Zyn.

74.      Zyn is defective because, among other reasons described herein, Defendants failed to warn consumers, including Plaintiff, in Zyn's labeling, packaging, and through the marketing promotion, and advertising of Zyn including that:

        a.   Zyn causes, maintains, or aggravates nicotine addiction and subject consumers to

the risks of concomitant health hazards that addictive, i.e., compulsive behavior can result in, and that this danger was even greater for minors;

b. Zyn causes harm by increased exposure to nicotine and other harmful ingredients;

c. Zyn is a nicotine delivery device not intended for persons under 26 years old;

d. Zyn delivers nicotine derived from tobacco;

e. Zyn delivers nicotine at greater levels than nicotine replacement therapies;

f. Zyn carries risks of behavioral, cognitive, and mental health injuries, cardiovascular injuries, gastrointestinal injuries, and periodontal injuries, among other harmful effects.

g. Which and when medical symptoms warranted medical care; and

h. How many Zyn pouches are safe to consume in a day.

75.    The failure to adequately warn about its defective products and to misleadingly advertise through conventional and social media avenues created a danger of injuries described herein that were reasonably foreseeable at the time of labeling, design, manufacture, distribution, and sale of Zyn.

76.    Ordinary consumers would not have recognized the potential risks of Zyn when used in a manner reasonably foreseeable to Defendants.

77.    Defendants are strictly liable for the sale of defective Zyn products that contained inadequate warnings.

78.    Plaintiff could not have averted injury through exercise of reasonable care for reasons including Defendants' concealment of the true risks posed by Zyn.

79.    Zyn was defective and unreasonably dangerous when they left Defendants' possession because it lacked adequate warnings.  The defects continued to exist through the products' sale to and use by consumers, including Plaintiff, who used the products without any substantial change in the products' condition.

80.    Defendants could have provided adequate warnings and instructions to prevent the harms and injuries set forth herein.

81.    Plaintiff was injured as a direct and proximate result of Defendants' failure to warn because Plaintiff would not have used or purchased Zyn had Plaintiff received adequate warnings and instructions.

82.    Defendants' lack of adequate and sufficient warnings and instructions and its inadequate and misleading advertising was a substantial contributing factor in causing the harm to Plaintiff.

83.    Plaintiff demands judgment against Defendants for compensatory and punitive damages, medical monitoring to diagnose Zyn induced injuries at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## CAUSE OF ACTION III

### Negligence

84.    Plaintiff incorporates paragraphs 1–44 by reference as though set forth fully at length herein.

85.    Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Zyn that Plaintiff consumed.

86.    Zyn was the type of product that could endanger others if negligently made, promoted, and sold.

87.    Defendants had a duty of reasonable care in designing, manufacturing, assembling, inspecting, testing, packaging, labeling, marketing, advertising, promoting, supplying, distributing and/or selling Zyn to avoid causing harm to those that consumed Zyn.

88.     Defendants knew or should have known through the exercise of reasonable care that the risks of consumers of Zyn, a powerfully addictive and dangerous nicotine delivery device.

89.     Defendants knew or should have known through the exercise of reasonable care, that minors and young people would be attracted to Zyn.

90.     Defendants knew or should have known through the exercise of reasonable care, that Zyn was dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner, particularly with minors and young adults.

91.     Defendants knew or should have known through the exercise of reasonable care, that Zyn was designed to cause or sustain nicotine addiction, and that Zyn posed a risk of harm including risks of addiction, behavioral, cognitive, and mental health injuries, cardiovascular injuries, gastrointestinal injuries, and periodontal injuries, among other harmful effects, as described herein, that were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, distribution, promotion, and sale of Zyn.

92.     Defendants knew or should have known through the exercise of reasonable care that Zyn needed to be researched, designed, manufactured, assembled, inspected, tested packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold properly, without defects and with due care to avoid needlessly causing harm.

93.     Defendants knew or should have known through the exercise of reasonable care that Zyn could cause serious risk of harm, particularly to young persons and minors.

94.     Defendants were negligent, reckless, and careless and failed to take the care and duty owed to Plaintiff, thereby causing Plaintiff to suffer harm.

95.     Defendants breached their duty of care by, among other things:

a.   Failing to perform adequate testing of Zyn prior to marketing to ensure safety, including long-term testing of the product, and testing for injury to the brain and cardiovascular systems, respiratory, gastrointestinal, and periodontal, and other related medical conditions, as well as its effect on mental health;

b.   Failing to inform or warn consumers, including Plaintiff, that Zyn had not been adequately tested or researched prior to marketing to ensure safety;

c.   Failure to take reasonable care in the design of Zyn;

d.   Failure to take reasonable care in the advertising, promoting, and marketing of Zyn;

e.   Failure to warn consumers, including Plaintiff, of the dangers associated with Zyn, including that it was unsafe, is powerfully addictive, can cause permanent changes in the brain, mood disorders, and impairment of thinking and cognition;

f.   Failure to use reasonable care in the sale of Zyn without adequate warnings; use of flavors and design to appeal to minors and young people;

g.   Misleadingly stating that Zyn is "free of tobacco";

h.   Failure to provide any instructions regarding a safe amount of Zyn to consume in a day;

i.   All other failures, acts and omissions set forth herein.

96.     Defendants further acted and or failed to act willfully and with conscious and reckless disregard for the rights, interests, and safety of Plaintiff, and Defendants acts and omissions had a great probability of causing significant harm; and in fact resulted in such harm.

97.     Defendants reasonably should have foreseen that young people would try Zyn and quickly become addicted, resulting in teenagers and young adults developing lifelong addictions.

98.     Plaintiff was injured as a direct and proximate result of negligence and/or gross negligence as described herein.

99.     Defendants' negligence was a substantial factor in causing and or contributing to Plaintiff's harms.

100.    Plaintiff demands judgment against Defendants for compensatory and punitive damages, medical monitoring to diagnose Zyn induced injuries at an earlier date to allow for timely

treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## CAUSE OF ACTION IV

### Fraud

101.    Plaintiff incorporates paragraphs 1–44 by reference as though set forth fully at length herein.

102.    Defendants designed manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold Zyn that Plaintiff consumed.

103.    Defendants created and implemented a plan to generate a market for Zyn and substantially increase sales of Zyn through a pervasive pattern of false and misleading statements and omissions. Defendants' plan was intended to portray Zyn as cool and safe alternatives to combustible cigarettes and e-cigarettes, with a particular emphasis on appealing to minors, based in part on flavors while misrepresenting or omitting key facts concerns Zyn's nicotine content, addictiveness, flavoring content and safety.

104.    Defendants' marketing, promoting, and advertising contained deceptive statements like "tobacco free" when in fact Zyn is derived from tobacco.

105.    Defendants further fraudulently and deceptively marketed Zyn as safe, healthful, or not harmful when Defendants knew it to be untrue.

106.    Defendants further fraudulently and deceptively downplayed, minimized, and concealed the risks associated with Zyn generally.

107.    Defendants' marketing, promoting, and advertising failed to disclose that it was an extremely potent nicotine delivery device; Zyn was designed to create and sustain nicotine addiction; and posed significant risks of substantial injury resulting from use of Zyn.  Promoting

Zyn as "tobacco-free" and like descriptors such as "cleaner than anything out there" explicitly or implicitly represents that Zyn is less harmful that other nicotine-based products, or that Zyn contains less of a substance, like nicotine, than others, or that Zyn is free of a substance compared to others.

108.    Defendants' conduct was fraudulent and deceptive because their misrepresentations and omissions had the capacity to, were likely to, and in fact did, deceive reasonable consumers including the Plaintiff.

109.    Defendants owed Plaintiff a duty to disclose these facts because they were known and/or accessible exclusively to Defendants, who have had exclusive and superior knowledge of the facts; because the facts would be materials to reasonable consumers; because Zyns pose an unreasonable risk of substantial bodily injury.

110.    Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions.  Reasonable consumers would have been expected to have relied on Defendants' misrepresentations and omissions.

111.    Defendants knew or should have known that its misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

112.    Defendants' misrepresentations and/or omissions were a substantial factor in causing Plaintiff's harms. Plaintiffs were injured as a direct and proximate result of Defendants' fraudulent conduct as described herein.

113.    Plaintiff demands judgment against Defendants for compensatory and punitive damages, medical monitoring to diagnose Zyn induced injuries at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys'

fees, and all such other relief as the Court deems proper.

114.    Through the exercise of reasonable diligence, Plaintiff did not and could not have discovered that Zyn caused Plaintiff's injuries and/or sequelae thereto because, at the time of these injuries and/or sequelae thereto, the cause was unknown to Plaintiff.

115.    Plaintiff did not suspect and had no reason to suspect Zyn caused Plaintiff's injuries and/or sequelae thereto until less than the applicable limitations period prior to the filing of this action.

116.    In addition, Defendants' fraudulent concealment has tolled the running of any statute of limitations. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the risks associated with the defects of Zyn and that these products caused their injuries and/or sequelae thereto. Through their ongoing affirmative misrepresentations and omissions, Defendants committed continual tortious and fraudulent acts.

117.    As a result of Defendants' fraudulent concealment, Plaintiff was unaware and could not have reasonably known or learned through reasonable diligence that Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

### PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants to the full extent of the law, including but not limited to:

1.  Judgment for Plaintiff against Defendants;

2.  Damages to compensate Plaintiff for injuries sustained as a result of the use of Zyn, including but not limited to physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, medical expenses, economic harm;

3.  Punitive damages;

4.   Attorneys' fees and costs;

5.   Prejudgment and post-judgment interest at the lawful rate;

6.   Medical monitoring;

7.   An order certifying the proposed classes, designating Plaintiffs as the named representatives of the classes, and designating the undersigned class counsel;

8.   A trial by jury on all issues;

9.   Any other relief the Court deems just and proper.


Dated: March 19, 2024            By:    /s/ Jeffrey L. Haberman
                                        Jeffrey L. Haberman
                                        Scott P. Schlesinger
                                        Jonathan R. Gdanski
                                        **SCHLESINGER LAW OFFICES, P.A.**
                                        1212 SE Third Avenue,
                                        Fort Lauderdale, FL 33316
                                        Telephone: (954) 467-8800
                                        jhaberman@schlesingerlaw.com
                                        *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.


Dated: March 19, 2024            By:    /s/ Jeffrey L. Haberman
                                        Jeffrey L. Haberman
                                        Scott P. Schlesinger
                                        Jonathan R. Gdanski
                                        **SCHLESINGER LAW OFFICES, P.A.**
                                        1212 SE Third Avenue,
                                        Fort Lauderdale, FL 33316
                                        Telephone: (954) 467-8800
                                        jhaberman@schlesingerlaw.com
                                        *Attorneys for Plaintiffs*